IN THE UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
|             ) | |
|     Plaintiff,     ) | |
|             )     Cause No. 3:20-cr-30151-SPM | |
| vs.             ) | |
|             ) | |
| KORY R. SCHULEIN,         ) | |
|             ) | |
|     Defendant.     ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW, Defendant, KORY SCHULEIN, by and through his attorney Sarah Sherer-Kohlburn and Sherer Law Offices, LLC and submits the following as his sentencing memorandum to be considered by the Court in support of his request for a sentence of 12 months in prison followed by home detention with electronic monitoring and ten years of supervised release with conditions. This sentence reflects the nature and circumstances of Mr. Schulein's offense and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2).

I.   **Defendant's History and Characteristics**

  a. Mr. Schulein is a 37 year old male who was born and has lived in the Carbondale/Sparta, IL area his entire life.

  b. Mr. Schulein has lived with his parents, Bob and Kathy Schulein, his entire life. He has no siblings, has never been married, and has no children. Because of this family make-up, there are no minor children who frequent his home with his parents. Mr. Schulein has no social, family, or work ties that would bring him in contact with minor children.

c. Mr. Schulein obtained his Bachelor's Degree and has previously worked in the insurance sales field, but was not working at the time of the offense or his arrest.

d. Mr. Schulein is not a flight risk. He has no passport, has never traveled outside the United States, and does not have family or close contacts outside the Illinois area where he has resided for his entire life. Although he was unemployed at the time of his arrest, he has strong family ties to his parents.

e. Mr. Schulein has no prior criminal record.

f. While on pre-trial release, Mr. Schulein abided by the set curfew and followed the requirements for monitoring of his phone.

g. Mr. Schulein assists his parents with going to doctor's appointments and taking care of them at home. He is their primary caretaker and hopes he can return to the home to continue providing for them as they age.

h. Mr. Schulein has acknowledged that he understands he needs counseling and treatment related to this offense. At the time of his plea, he had sought out a counselor in the area, Dr. Bob Clipper, and been referred to four possible therapists or counselors in the area. He was unable to schedule an assessment prior to his plea, but he takes the need for counseling seriously. It is his hope that he will be able to make progress in counseling during his prison term and he then intends to continue with such upon his release.

II.   **Nature and Circumstances of the Offense**

a. Mr. Schulein agrees with the nature and circumstances of the offense as set out in the Government's Sentencing Memorandum.

    b. When the search warrant was executed at Mr. Schulein's home, he quickly admitted to the items that he had on his devices. He provided his passwords and usernames to law enforcement as well as provided information about websites he had visited in order to assist with the investigation. Although law enforcement did not find it necessary, he also offered to assist in any other way in order to identify other individuals who may have had similar content on their devices or frequented similar websites as those he had visited.

    c. Mr. Schulein has never objected to any request from the government for forfeiture of the devices used in connection with these charges.

    d. Mr. Schulein has acknowledged from the beginning of this case that he understands the severity of the offense, takes full responsibility, and knows that an offense of such nature should require prison time. He has not sought to avoid this or to diminish the severity of his offenses.

    e. Mr. Schulein understands that, although he did not have physical contact with the victims in this case, his actions are part of an ongoing harm caused to the victims in this case. For this reason, he worked, through counsel, to make agreements to provide restitution to every victim who requested such prior to his plea hearing. Mr. Schulein agreed to pay a total of $12,000.00 to five victims and this amount was paid on the date of his plea hearing so that it could be immediately distributed.

**III. Legal Framework**

    a. The Court must correctly calculate the guideline range, but may not treat that range as mandatory or presumptive. *Gall v. United States,* 552 U.S. 38, 49 (2007).

      Rather, it must treat the guideline range as "one factor among several" to be considering in imposing an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).

b. The Court must consider all the relevant factors, "make an individualized assessment based on the facts presents," *Id.* at 49-50, and explain how those facts relate to the purposes of sentencing. *Id.* at 53-60.

c. The Court's primary duty is to "impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing." *Pepper v. United States*, 131 S. Ct 1229, 1242-43.

d. The Supreme Court specifically authorized this Court to disagree with a guideline. This Court, presented with the full picture of the Defendant's background and the facts at issue in this charge, must be able to make the final determination of the appropriate sentence.

e. This Court may properly find that the child pornography guideline was not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience, see *Kimbrough*, 552 U.S. at 109-10, consistent with the Supreme Court's repeated recognition that when a guideline was not developed by the Commission based on empirical data of past sentencing practices and national sentencing experience, it is not likely that the guideline "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s objectives," and that a policy-based variance from such a guideline is not subject to "closer 8 review" and is "not suspect." See *Kimbrough*, 552 U.S. at 109-10; *Spears*, 555 U.S. at 264; *Rita*, 551 U.S. at 348, 349-50.

f. In February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines for non-production offenders. See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012) ["Child Porn Report"]. The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," id. at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." Id. at ii, 323.

g. The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi; id. at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id*. at 6. Because "sentencing enhancements that originally were intended to provide additional proportional 10 punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting

behaviors," *id.* at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id*. In short, technological advancements have made it much easier to quickly accumulate numerous images and so this is no longer as reliable a touchstone to distinguish between levels of conduct as it once was.

h. The Commission reported that approximately one quarter of federal offenders "received child pornography from commercial websites, thereby fostering the commercial markets," and 11 one quarter engaged in "personal distribution" to another individual through bartering or trading of images, also described as a "market*." Id.* at 98-99. There is, however, no social science research available to support the theory that criminal punishments "have affected commercial or non-commercial 'markets' in child pornography since the advent of the Internet and P2P filesharing." *Id.* at 98. Again, the guidelines related to child pornography do not adequately take into account the nature of today's ever-growing internet community and how people interact online.

i. The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual 12 dangerousness." Id. at xx; see also id. at 321. The Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific

      congressional directives or legislation directly amending the guidelines." *Id.* at xviii, 322.

j. The Commission recommends that the specific offense characteristics related to the types and volume of images, distribution, and use of a computer "be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g., the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)," and "to reflect offenders' use of modern computer and Internet technologies." *Id*. at xviii-xix, 322-23.

## IV. Guidelines Range Calculation

a. Mr. Schulein agrees that the Presentence Report accurately calculates the Guidelines as 151-188 months of incarceration and that the Government's Sentencing Memorandum accurately calculates a total offense level of 34.

## V. Requested Sentence

a. In calculating the Guidelines, Mr. Schulein receives five points based on possessing 600 or more images. As noted above, because the majority of offenders now interact online and because technological advancements have made it easier to quickly accumulate web content, even when and if not intending to do so.

b. Mr. Schulein also received 4 points for possessing material involving sadistic and masochistic conduct. Defendant acknowledges that any images depicting the rape of a child, as described in the Government's Sentencing Memorandum, fall under this definition. However, this factor fails to account for the wide range of sadistic and masochistic conduct that is collected and held by perpetrators of similar offenses. Perpetrators who collect child porn involving violence beyond sexual violence are given the same increase in offense level as that given to Mr. Schulein here, although there is no indication in the Government's Sentencing Memorandum that this is the case with respect to Mr. Schulein.

c. Mr. Schulein offered to provide assistance to the government and to cooperate in whatever was requested to assist in identifying other perpetrators. Although the government did not feel that he could provide substantial assistance to them, he did provide assistance in the form of providing logins and passwords, and would have provided further assistance had it been thought to be useful by the government.

d. Were Mr. Schulein to have not received the aggravators mentioned above, or to have received only some of them, his offense level would have been as low as 25, which would result in a Guidelines range of 57-71 months imprisonment. If he had been able to provide substantial assistance to the Government, as was offered, the Guidelines would have further supported a reduction downward.

e. Taking all factors into consideration, along with the facts of this case and Mr. Schulein's cooperation and acceptance of responsibility, a sentence of 12 months is requested. This is representative of a sentence that is one Zone lower, being in

       Zone C rather than Zone D, of the guidelines, which is appropriate given the acceptance of responsibility, lack of criminal history, and assistance offered by Defendant.

  f. Defendant further notes that electronic home detention following a period of incarceration would be appropriate. This would allow him to assist his aging parents at home while also extending severe restrictions on his freedom, as is appropriate here. Mr. Schulein believes that a significant period of home detention is appropriate on this case, followed by ten years of supervised release, including conditions to continue undergoing any treatment deemed necessary.

## VI. Conclusion

  a. For the reasons states above, Mr. Schulein respectfully requests this court impose a sentence of 12 months imprisonment, followed by a significant period of home detention, followed by ten years supervised release with conditions. Defendant believes that this sentence is "sufficient, but not greater than necessary" to serve the Court's sentencing purposes.

Respectfully Submitted,

KORY R. SCHULEIN, Defendant

BY: /s/ Sarah Sherer-Kohlburn
Sarah Sherer-Kohlburn
MO Bar: 68617
Sherer Law Offices, LLC
517 St. Louis Street
Edwardsville, Illinois 62025
(618) 692-6656—telephone
sarah@shererlaw.com
*Attorneys for KORY R. SCHULEIN*
*Defendant*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and accurate copy of the foregoing document was sent via electronic mail this 3rd day of August 2021, to the following counsel of record:

Jessica L. Urban
jessica.urban@usdoj.gov

Nathan D. Stump
Nathan.stump@usdoj.gov

Alicia Ann Bove
Alicia.bove@usdoj.gov

    /s/Sarah Sherer-Kohlburn