IN THE DISTRICT OF THE UNITED STATES OF AMERICA

FOR THE SOUTHERN DISTRICT OF ILLINOIS

```
------------------------------------------------------------------
UNITED STATES OF AMERICA,        |
                                 |
                Plaintiff,       |
                                 |
vs.                              | Case No. 20-cr-30151-SPM
                                 |
KORY R. SCHULEIN,                |
                                 |
                Defendant.       |
------------------------------------------------------------------
```

Transcript of Sentencing Hearing
September 1, 2021

Proceedings held in person before
the Honorable **STEPHEN P. McGLYNN**,
United States District Judge Presiding

East Saint Louis, Illinois

```
------------------------------------------------------------------
```

**REPORTED BY:**      **HANNAH JAGLER**, RMR, CRR, FCRR
Official Court Reporter
750 Missouri Avenue
East Saint Louis, Illinois 62201
618-482-9481
Hannah_Jagler@ilsd.uscourts.gov

Following proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

**<u>APPEARANCES</u>:**

FOR GOVERNMENT:        **NATHAN D. STUMP**
                       United States Attorney's Office
                       9 Executive Drive, Suite 300
                       Fairview Heights, Illinois 62208
                       618-628-3700
                       Nathan.Stump@usdoj.gov

                       **ALICIA ANN BOVE**
                       US Department of Justice
                       1301 New York Avenue NW
                       Washington, DC 20005
                       202-616-5313
                       Alicia.bove@usdoj.gov

FOR DEFENDANT:         **SARAH SHERER-KOHLBURN**
                       Sherer Law Offices
                       517 Saint Louis Street
                       Edwardsville, Illinois 62025
                       618-692-6656
                       Sarah@shererlaw.com

1
## INDEX
2                                                                    PAGE


4    Statement By Mr. Robert Schulein.........................   9

5    Statement By Ms. Kathy Schulein.........................   10

6    Statement By the Defendant..............................   12

7    Argument By Ms. Bove....................................   13

8    Argument By Ms. Sherer-Kohlburn.........................   20

9    Rebuttal By Ms. Bove....................................   23

10   Sentencing By the Court.................................   24

11   Sentence................................................   29

12

13

14
## INDEX OF EXHIBITS
15

16   NO.  DESCRIPTION                              OFFERED RCV'D
     1    Images........................................ 8

17

18

19

20

21

22

23

24

25

1        **<u>TRANSCRIPT OF PROCEEDINGS</u>**

2        (Proceedings commenced at 1:38 p.m.)

3        THE COURTROOM DEPUTY:  United States District

4   Court for the Southern District of Illinois is now in session,

5   the Honorable Stephen McGlynn presiding.  You may be seated.

6        Calls case number 20-cr-30151, United States of

7   America v. Kory Schulein, for a sentencing hearing.

8        Counsel, if you would please state your name for

9   the record.

10       MR. STUMP:  Good afternoon, Your Honor.  Nathan

11   Stump on behalf of the United States.

12       MS. BOVE:  Alicia Bove on behalf of the United

13   States.

14       THE COURT:  Thank you.  Good afternoon.

15       MS. SHERER-KOHLBURN:  Good afternoon, Your Honor.

16   Sarah Sherer-Kohlburn for the defendant, Kory Schulein.

17       THE COURT:  Good afternoon.

18       All right.  Previously in this matter, the

19   defendant entered into a plea of guilty to one count of

20   knowingly receiving child pornography.  And at that time, we set

21   this -- we set this matter for a sentencing hearing, and we are

22   here at the sentencing hearing.

23       I have been shown and received an executed copy

24   signed by Mr. Schulein of a full waiver of reading of terms and

25   conditions of supervision in open court at the time of

1    sentencing.  I have received and reviewed the sentencing

2    memorandum of both the government and of the defendant.  I've

3    received and reviewed copies of a number of victim impact

4    statements relating to some of the individuals that were

5    depicted in pornography that was found in possession of

6    Mr. Schulein.

7                   Counsel, did you have a chance to go through the

8    full waiver of reading of terms and conditions with your client?

9                   MS. SHERER-KOHLBURN:  Yes, Your Honor.

10                  THE COURT:  And was -- is that your signature?

11                  MS. SHERER-KOHLBURN:  Yes, Your Honor, and

12   Mr. Schulein signed as well.

13                  THE COURT:  And, Mr. Schulein, were you given an

14   opportunity to read this?

15                  THE DEFENDANT:  Yes, Your Honor.

16                  THE COURT:  All right.  And that's your

17   signature?

18                  THE DEFENDANT:  Yes.

19                  THE COURT:  All right.

20                  I've also been shown and have read three letters,

21   one dated August the 8th, 2021, from Audra Poovey, A-u-d-r-a,

22   Poovey is P-o-o-v-e-y.  She's written a letter on behalf of

23   Mr. Schulein, who she's known as a neighbor and classmate and

24   considered a friend for over 30 years.

25                  I've received a letter and reviewed it from

1    Mr. James Steiner, S-t-e-i-n-e-r, who identified himself as

2    close friends and neighbors of Kory and his family for over

3    30 years and speaks to his good nature and positive influence.

4             I've also received a letter from Walter William

5    Steiner, who refers to Kory as a neighbor and a, quote, brother,

6    closed quote, for over 30 years, has been a close friend, and

7    that identifies Kory as a very calm, intelligent, educated man

8    whose presence is very important to his family and friends.

9             All right.  Based upon the sentencing memos, my

10   understanding is, Counsel for the government, you're going to be

11   advocating for a sentence within the guidelines, sentencing

12   guidelines?

13            MS. BOVE:  That's correct, Your Honor.

14            THE COURT:  All right.  And, Counsel, you're

15   going to be requesting a downward departure from the

16   sentencing -- the guidelines and the statute itself; is that

17   correct?

18            MS. SHERER-KOHLBURN:  Yes, Your Honor.

19            THE COURT:  I've reviewed the presentence -- the

20   presentence investigative report and the documents attached to

21   it.  Is there any objections from the government?

22            MS. BOVE:  No, Your Honor.

23            THE COURT:  Any objections from Defendant?

24            MS. SHERER-KOHLBURN:  No, Your Honor.

25            THE COURT:  All right.  Also set out that he's

rated at a total offense level of 34 with a criminal history of

1.  The statutory provisions for this crime allow for a sentence

of a minimum of five years' incarceration to a maximum of

20 years, with the guideline provisions recommending a sentence

between 151 months and 188 months.  Incarceration would be

followed by supervised release of a minimum of five years and

could be for the rest of his life.  He's not eligible for

probation.

The fine in this case could be as much as

$250,000.  The guideline provisions puts the recommended fine

between 35,000 and 250,000.  Restitution was set at 11,000,

which I understand has been paid; is that correct?

MS. BOVE:  My understanding is it's 12,000, Your

Honor, and that's been paid.

THE COURT:  All right.  There's a special

assessment of $100, and there's a sex offender special

assessment of -- statutory provision of $5,000.

There would be a forfeiture of the HP Pavilion

laptop computer, one black Seagate external hard drive, and a

second black Seagate external hard drive.

Does the government agree that's the statutory

provisions and sentencing guidelines in this matter?

MS. BOVE:  Yes, Your Honor.

THE COURT:  Does the defendant agree that those

are the statutory provisions and guidelines in this matter?

1          MS. SHERER-KOHLBURN:  Yes, Your Honor.

2          THE COURT:  All right.  Thank you.

3          My understanding, the government will not be

4     presenting any witnesses at this hearing; is that correct?

5          MS. BOVE:  That's correct, Your Honor.

6          THE COURT:  Is there any evidence that you wish

7     to present at this hearing?

8          MS. BOVE:  Your Honor, consistent with what was

9     discussed with Defense Counsel, we have one exhibit depicting

10    images of the young individual the defendant was engaging in an

11    online romantic relationship with.  We're requesting that those

12    be kept under seal to protect the victim's identity.  We've

13    previewed this with Defense Counsel.

14         THE COURT:  Any objection?

15         MS. SHERER-KOHLBURN:  No, Your Honor.

16         THE COURT:  All right.  Subject to presenting

17    those, that exhibit, anything else the government's going to

18    offer other than argument?

19         MS. BOVE:  No, Your Honor.

20         THE COURT:  All right.  The defendants wish to

21    call witnesses; is that correct?

22         MS. SHERER-KOHLBURN:  Yes, Your Honor,

23    Mr. Schulein's parents.

24         THE COURT:  All right.  Ladies and gentlemen --

25    it's my understanding that you're going to ask Mr. Schulein's

1    parents to -- they wish to make a statement?

2                    MS. SHERER-KOHLBURN:  Yes, Your Honor.

3                    THE COURT:  All right.  If you prefer, you can

4    come to the podium and speak into the podium and make your

5    statement.  If you feel like you need to be seated somewhere, we

6    can make arrangements for you to be seated somewhere where you

7    have access to a microphone.  Who you would like to call first?

8                    MS. SHERER-KOHLBURN:  I will call Mr. Robert

9    Schulein, Kory's father.

10                    THE COURT:  Come on up, Mr. Schulein.

11                    MS. SHERER-KOHLBURN:  Yeah, you can come on up

12    right here.

13                    THE COURT:  Now as you're making your way up,

14    these are -- come on up.  These are always emotional situations.

15    If you feel like you need to sit down, there will be a chair

16    right behind you.  Please take a seat.

17                    With that, Mr. Schulein, you're just making a --

18    you're just making a statement; is that correct?

19                    MR. ROBERT SCHULEIN:  Yes, Your Honor.

20                    THE COURT:  All right.  Come on up and identify

21    yourself.  I don't see a need to swear you in as a witness.

22                    Please proceed.

23                    MR. ROBERT SCHULEIN:  Okay.  Thank you, Your

24    Honor.

25                    My name is Robert Schulein.  I'm Kory's father.

1   I'm just making sure and saying he's never ever, ever been in

2   any kind of trouble before, and this is a complete shock to us.

3   And he's always been a high achiever, from preschool all the way

4   through college, winning numerous awards and what have you.  And

5   even in high school, he was on TV for high IQ.  And we still

6   have a tape of that, by the way.

7                   And Kory's been our caretaker for several years,

8   because I've had numerous health issues.  I'm a disabled

9   veteran.  And I'm hearing impaired.  And Kory's been doing

10  everything for me around the house, chores and what have you.

11  And I really need him at home, Your Honor.

12                  And he's a loving son.  He always takes care of

13  us and everything, whatever we do.  He acts as our ears to make

14  our doctor's appointments and everything, because my wife is

15  also hearing impaired.  And would you please consider Kory's

16  good behavior in his past, as far as taking care of his mother

17  and father, in your decision on this?  I thank you.

18                  THE COURT:  Thank you.

19                  Your next witness, please?

20                  MS. SHERER-KOHLBURN:  Yes, Your Honor.  I would

21  call Kathy Schulein, Mr. Schulein's mother.

22                  MS. KATHY SCHULEIN:  Your Honor, please allow me

23  to thank you for taking the time to allow me to speak on behalf

24  of my son Kory Schulein.

25                  I appear in front of you today as a mother asking

for the lightest possible sentence you can give for my son.  My

husband and I are very dependent on our son to assist us with

our day-to-day lives.  Kory provides transportation for my

husband, a Vietnam veteran, to his appointments at the VA

hospital in Saint Louis for his health needs.  This is something

I am unable to do.

Sir, I'm hearing impaired and Kory has acted as

my ears for my phone calls and provides for my care as well.  We

are finding it to be increasingly difficult to function well

without him.

Kory has never been in trouble, and while he

faces consequences at this time, he is not deserving of the

maximum punishment.  Your Honor, I'm asking you, as a mother,

please consider giving him the lightest sentence you can.  We

need our son, sir.  Thank you for your consideration, Your

Honor.

THE COURT:  Thank you, Mrs. Schulein.

All right.  Counsel, it's my understanding that

your client would like to address the Court; is that correct?

MS. SHERER-KOHLBURN:  Yes, Your Honor.

THE COURT:  All right.  As I explained at your --

at the time that you pled guilty, now's your chance to tell me

anything you want me to know or to think about before I

determine what would be a just and fair and proper sentence to

impose for the crime that you've admitted you committed.  Here's

1    your chance.  Please proceed.

2             THE DEFENDANT:  Your Honor, I would just like to

3    say that I understand that what I've done is wrong and I have to

4    accept responsibility and the consequences for my actions.  At

5    this time, I just would like to offer my deepest apologies to

6    the Court, to everyone involved, for my actions.  And I now give

7    myself to you for your judgment and hopefully for your mercy.

8    And I can only give you my promise that once I've completed my

9    sentence, I wish only to return to my family, live quietly, and

10    never ever see myself in any kind of trouble like this ever

11    again.  Thank you.

12             THE COURT:  Thank you.

13             All right.  At this stage, we -- as I've

14    previously established, I've set out the guidelines and the

15    attorneys agree as to the statutory guidelines and the

16    recommended sentencing guidelines.  I'm going to allow the

17    parties to now make their, essentially, closing arguments, to

18    argue what sentence they think the Court ought to impose.

19             In considering what sentence to impose, I have to

20    consider sentencing guidelines that are set out in Section 3553.

21    After calculating the guidelines and departures and hearing

22    argument, I must consider the relevant factors set out in

23    18 USC Section 3553, and ensure that I impose a sentence

24    sufficient but not greater than necessary to comply with the

25    purposes of sentencing.

1    These purposes include the need for the sentence

2    to reflect the seriousness of the crime, to promote respect for

3    the law, to provide just punishment for the offense.  The

4    sentence should also deter criminal conduct, protect the public

5    from future crime by this defendant, promote rehabilitation.

6    In addition to the guidelines and policy

7    statements, I must consider the nature and circumstances of the

8    offense, I must consider the history and characteristics of the

9    defendant, and I must consider the need to avoid unwarranted

10   sentence disparities among similarly situated defendants, and

11   I'm to consider the types of sentences that are available.

12   All right.  Counsel for the government, do you

13   wish to make a final argument?

14   MS. BOVE:  Yes, Your Honor.  Thank you.

15   Briefly, Your Honor, for recordkeeping purposes,

16   we just like to put on the record that consistent with

17   conversations with Defense Counsel in connection with today's

18   sentencing, we made available to the Court a representative

19   sample of some of the child abuse sexual abuse material found on

20   the defendant's hard drive.  The materials are back with the

21   FBI.  And that viewing took about approximately 10 minutes.

22   With regards to the United States' recommendation

23   today for sentencing, we are recommending a 151-month sentence,

24   followed by a ten-year term of supervised release.  This is

25   consistent with the United States' position in the plea

1    agreement to agree to the low end of the sentencing guidelines.

2    The United States submits that 151 months is reasonably and

3    appropriate -- appropriately accounts for the factors set forth

4    in 3553(a).

5         And turning to those factors, Your Honor, for

6    3553(a), with regards to the nature and circumstances of this

7    offense and the history and characteristics of the defendant,

8    the defendant may tell this Court that 151 months is a number

9    too big for this case.  It is not.

10        We've seen big numbers in this case, big numbers

11   like 9,136.  That's the amount of images of child sexual abuse

12   material the defendant collected and curated on an encrypted

13   hard drive.  We've seen the number 1,105.  Those are the number

14   of images of children under the age of 12 that are being

15   sexually abused.  We've seen the number 135.  Those are the

16   numbers of images that depict bondage, humiliation, or torture.

17   We've seen the number 177.  Those are videos, videos, 104 of

18   which are under the age of 12, the victims that are being

19   depicted in their child sexual abuse.

20        We've seen the number 13,733.  That is the number

21   of messages that the defendant sent on just one website

22   dedicated to child exploitation on the dark net, messages he's

23   sending, promoting the culture of child sexual abuse, promoting

24   the culture of pedophilia, and providing other like-minded

25   individuals access to images of child sexual abuse, distributing

1    those images.  We've also seen the number 144.  That's the

2    messages he sent on a different website, so active on that

3    website that he served as a guide, a moderator, meaning that he

4    could moderate the content on this website.

5            And then finally we have the number 8, which is

6    the amount of years that the defendant admitted that he spent

7    viewing child sexual abuse material on the internet.

8            The defendant tells this Court through his

9    sentencing memo that the guidelines are too high, that they grab

10   too widely at enhancements, that he should only serve 12 months.

11   First we would remind the Court that the statutory minimum here

12   is five years.  And second, even the distinguishing factors that

13   the defendant advocates for assessing the culpability militate

14   for guideline sentencing here.

15           He tells the Court that the Court should look to

16   his offense, not just the -- his collection.  And so we look to

17   his behavior in his offense.  And here, he's an individual who's

18   reported to have a high IQ, to be gifted in intellect and in

19   schooling, and instead of using those gifts in a positive

20   manner, he used them to avoid detection from law enforcement for

21   years.  He employed advanced technology.  We're talking about

22   encryption, VPN, the dark web.  He did all of that to avoid

23   detection.  And he seemingly dedicated countless hours to this,

24   sending staggering amounts of messages on these platforms,

25   promoting child sexual abuse.  And he did this to satisfy his

1    pure interest in children, and he was able to do so, to spend so
2    much time doing so, because since 2016 he's been unemployed and
3    living financially off of his parents.

4           The defendant's story is one of escalation.  This
5    is an individual who started viewing child sexual abuse material
6    and masturbating to it, to then downloading, curating, amassing
7    a collection, and then engaging on these platforms, chatting,
8    promoting, distributing.  And then finally we see his most
9    brazen act, which is reaching out to a child, 11, who he
10   understood to be 11 or 12 years old, in the UK.  And to that,
11   Your Honor, we have what's been previously marked for
12   identification purposes as Government's Exhibit 1, which we are
13   asking to be kept under seal, if I may pass it up.

14          What's before Your Honor are the images of that
15   individual, the young girl that defendant was chatting with, and
16   that he himself admitted to having a romantic relationship with
17   her for one to two years.

18          The defendant's behavior is precisely the
19   behavior that we must deter to protect innocent victims and also
20   to deter like-minded individuals as the defendant.  Also here,
21   Your Honor, there are limited resources when we are
22   investigating how to protect and make an impact in deterring
23   crimes.  And here, if the impact that we are making is only for
24   small sentences for individuals who are actively revictimizing
25   victims, then those resources get allocated elsewhere.

1          The guidelines range actively reflect all of the

2     benefits that the defendant has received pursuant to his plea

3     agreement.  To be sure he pled to a lower charge, he pled to

4     receipt, meaning he could have been charged with advertisement.

5     He's easily satisfied those elements.  He also highlights that

6     he cooperated with the government and that he has no criminal

7     history.  Again, those two factors are baked into the guidelines

8     range.  They're reflected in the range.

9          He also in his sentencing memo highlights that if

10    he didn't have over 600 images and if he hadn't had sadistic

11    images, his guidelines range would be lower.  But he did have

12    that, by a factor of 10.  And they depict some of the more

13    horrifying events that can be -- can be captured:  Anal,

14    vaginal, oral rape of children; sexual violent abuse of

15    toddlers.  His enhancements are proper.

16         And, Your Honor, as to the unwarranted sentencing

17    disparities, we've gone ahead and looked around to see, do we

18    have similar situated defendants where Courts have given 151

19    sentence -- 151-month sentence and supervised release?  And

20    we've been able to identify a good sample of that.

21         We've seen that in the United States v. Gable.

22    And that's 3:19-cr-29 in the Eastern District of Kentucky.

23    There the defendant, like here, had one count of receipt, and he

24    was sentenced to 151 months.  He had used the internet to find

25    these images, and he had thousands of images much like the

1    defendant here.

2                In the United States v. Lawson, which is

3    4:18-cr-36, and that's out of the Middle District of Georgia,

4    the defendant there received 121 months for participating in the

5    dark web child pornography sites, and again, he had one count of

6    receipt.

7                In the United States v. Soloff, out of the

8    Eastern District of North Carolina, the defendant is very

9    similarly situated to our defendant, thousands of images using

10   message boards on the dark net.  He received a sentence of

11   151 months and ten years of supervised release.

12               There are more examples that we can provide to

13   the Court, but those are just for discussion purposes right now.

14               And finally, Your Honor, turning to the children

15   depicted here.  These are real children.  And they're not here

16   with us today, but part of our job is making sure their voice is

17   heard.  And as Your Honor noted, some of them have provided

18   victim impact statements here.  And these victims don't have the

19   ability to just serve a sentence and be done with their abuse.

20   As they tell the Court in their victim impact statements, these

21   are life sentences.  They relive daily their revictimization of

22   people like the defendant trading in their most dark and

23   traumatic days like commodities, back and forth.  Every day they

24   live with that.

25               And indeed, as the victim -- and I'm

1    intentionally not saying her name here because we don't want to

2    create a road map for other like-minded individuals to go and

3    search for this individual's name.  But the victim in a

4    particular series of child pornography, the series that the

5    defendant collected the most of, the PSR -- on page 20 of the

6    PSR contains her victim impact statement.  And she tells the

7    Court -- and the Court saw her images earlier today of her being

8    vaginally raped as a 5-year-old -- that she continues to incur

9    abuse every day, that she's stalked, she's harassed, that

10   individuals send her sexually explicit items, that she's been

11   forced to move, that people reach out to her friends and family.

12             And she tells the Court, and I'm just going to

13   quote it here, that "every time someone views this trash, he is

14   once again making me relive the most horrific part of my

15   childhood.  I can never fully heal because the perpetrators and

16   stalkers never allow me to do so.  These people need to be

17   punished for taking away a major part of my childhood and sense

18   of security."

19             Also to Your Honor's earlier questions regarding

20   an individual who Your Honor viewed earlier in bondage, her

21   victim impact statement is -- was included on -- so I'm going to

22   make a revision there.  Her victim impact statement is on

23   page 20.  The previous one is on page 35.  And when I say

24   "previous," that's the series the defendant collected the most

25   of.

1      So for those reasons, Your Honor, and those laid

2  out in our opposition paper, we submit 151 months here is the

3  just sentence.  It is sufficient but not more than necessary.

4  Thank you.

5              THE COURT:  Thank you.

6              Counsel?

7              MS. SHERER-KOHLBURN:  Yes.  Thank you, Your

8  Honor.  Mr. Schulein has lived with his parents, Bob and Kathy

9  Schulein who you heard from --

10             THE COURT:  Could you get by a microphone?  I

11  want to make sure we get -- I can hear you.

12             MS. SHERER-KOHLBURN:  Is that better?

13             THE COURT:  Much better.  Yes.

14             MS. SHERER-KOHLBURN:  Thank you.  I can't hear

15  when I'm on the mike or not, so thank you.

16             Mr. Schulein has lived with his parents, Bob and

17  Kathy Schulein, who you heard from earlier, for nearly his

18  entire life.  He has no siblings.  He's not married.  He does

19  not have any children.  And I would note that his regular daily

20  life does not put him in any situations where he would be around

21  children.

22             Family friends have submitted letters of

23  reference detailing how Kory helps his parents and how he's

24  caring and loving with his friends and family.  He has no prior

25  criminal record.  He is not a flight risk.  He's never even

1   traveled outside the country or really the area where he grew

2   up.

3           Most importantly, Mr. Schulein has acknowledged

4   from the very beginning of this case that what he did was wrong

5   and that he understands that he needs counseling and treatment

6   for this.  At the time of his plea, he had sought out the help

7   of a local counselor in the area, Dr. Bob Clipper.  And from the

8   very moment that Kory and I met, he was always very clear that

9   he would be entering a guilty plea, that he was going to take

10  responsibility for what he did, and that while he would beg the

11  Court for mercy, he would not try and diminish or negate his own

12  responsibility in this.  And that has been not only in this

13  court, which the Court has seen, but also in communications with

14  the government and in all communications with myself, with his

15  family.  Kory has acknowledged that what he did was wrong.

16          He made an agreement for restitution in this case

17  with every single victim who's requested that.  Every victim who

18  has reached out to me, we made an agreement for restitution.

19  And not only do we make that agreement, but Kory paid that

20  restitution at the time of his plea.

21          Here, and as further detailed in the sentencing

22  memo that I submitted to the Court, Kory received enhancements

23  for computer use and the type and volume of images, enhancements

24  that now apply to almost all offenders of this type.  Because of

25  this, the guidelines fail to differentiate among offenders in

1    terms of their culpability.  Here today, the government has

2    presented three examples of what they propose are similarly

3    situated cases, and I would note that even in these examples

4    chosen by the government, the ones the government chose, even

5    one of those had a downward departure from the sentencing

6    guidelines to 121 months.  And so you can see the downward

7    departure really is the standard here, if the government is

8    going out and trying to handpick cases that support a sentence

9    within the guidelines, proposes to the Court a sentence that was

10   below the guidelines by 30 months.

11             In this case, Mr. Schulein offered to provide

12   assistance to the government.  When the government came to

13   execute the search warrant, he quickly provided passwords and

14   information he had used to log on to various sites and interact.

15   He offered to provide any help he could if it would have been

16   useful to help identify other perpetrators.  While the

17   government did not end up finding that that help that was

18   offered would be useful, Mr. Schulein did offer it and he was

19   willing to provide anything he could, because he did, again,

20   recognize that what he did was wrong and take responsibility for

21   that.

22             Had Mr. Schulein not received the aggravators

23   mentioned above for the type, number, for using the computer,

24   his offense level could have been as low as 25, which would have

25   resulted in guidelines range of 57 to 71 months.  And then

1    again, if he'd been able to provide that substantial assistance

2    that he offered to the government, it would have supported even

3    a further reduction downward.

4              Taking all these factors into consideration along

5    with the facts of the case, Mr. Schulein's cooperation, his

6    acceptance of responsibility, which you heard again today, we

7    would ask for the statutory minimum here of five years.  We

8    would suggest also that a period of home detention and a

9    significant period of supervised release would allow

10   Mr. Schulein to be at home with his parents and assist them in

11   caring for them while also allowing for a significant period of

12   restriction on his freedom, as is appropriate here and as Kory

13   acknowledges.  So that, again, we request that the Court impose

14   the minimum five-year sentence here.  Thank you.

15              THE COURT:  Thank you.

16              Rebuttal?

17              MS. BOVE:  Your Honor, just briefly for the

18   Court's reference, as I noted, we were just providing a few

19   examples, but we're -- can provide others.

20              We would direct the Court to United States v.

21   Stanford, which is 1:19-cr-317.  That's coming out of the

22   Southern District of Indiana.  Again, one count of receipt,

23   sentence of 151 months, no priors.  And that's as recently as

24   2020 of this year.

25              Another reference here is United States v. Kerr,

1    and that's coming out of the -- case number there is

2    3:19-cr-296.  That's Northern District of Texas.  That's

3    151-month sentence, 15 years of supervised release, December of

4    2020.

5              And finally, US v. Bonnette, out of the Eastern

6    District of North Carolina in 2019.  A single count of receipt,

7    peer to peer, similar to here, 188 months, lifetime supervised

8    release, no priors.  Thank you.

9              THE COURT:  Thank you.

10             There was a radio show in the 1930s called "The

11   Detective Story."  And it had an intro, "What evil lurks in the

12   heart of men?"  And then it followed up, "The shadow knows," and

13   that was the catch to get people engrossed in the radio show.

14   But we as judges are called upon to try to figure out what evil

15   lurks in the heart of people who are before us.  And often we

16   have to see what's lurking in the shadows, the dark web, as

17   referred to, and try ourselves to figure out, try to understand,

18   what's the real nature of this crime?  These are not easy cases,

19   because different people can fall into the gambit of the reach

20   of the statutes.

21             There are some people that fall into the reach of

22   the statute that never actually engaged themselves in any

23   abusive conduct upon a child.  There are those who are

24   pedophiles but their fantasies are enough for them.  There's

25   others that have to act upon those fantasies, to satisfy their

1    desires.  And it's not the sort of thing people talk about.

2    People try to hide what they're doing in the shadows.

3              So we look at things like remorse or no remorse.

4    We look to see if there's any evidence that the person sought

5    help themselves, that they struggled with the fact that they had

6    pedophile urges and they would seek treatment to try to get

7    help.  We look to see if people have impulse control disorders,

8    what is going on.  And it's not that easy.

9              But we do know this, that the reason the

10   sentencing range is high is because of the colossal and

11   immensely harmful impact this has on children.  The victims are

12   often tormented long after the actual physical abuse stops, for

13   decades, maybe even a lifetime, of torment, of psychological

14   harm.  We see these victims engaging in self-harm.  We see them

15   suicidal.  We find them having committed suicide.

16             We see how difficult it is for them to form

17   trusting relationships, to have a normal adult life.  And some

18   of these victims talk about years later, when they did find

19   someone that they loved and got married, but the difficulty of

20   intimacy being part of that relationship because of what they

21   experienced as a child.

22             Some people can delude themselves into thinking

23   that, well, these children are consenting, these children are

24   enjoying it, these children are having fun, until you see the

25   bondage video, where you contemplate an adult man anally raping

1    a 5-year-old.  One cannot -- no rational person can be so

2    delusional as not to immediately sense upon gazing upon that

3    image, this poor child, the torment of this poor child.  To one

4    who gazed upon and not being able to empathize with the child,

5    but instead become sexually aroused is very problematic.

6              I think -- and I have to say, it's not just the

7    children.  Your parents are victims of this crime as well.

8    You're going to go to jail, and they are not going to be able to

9    have your help, which they rely upon, that they need, in which

10   no doubt you want to give them.  As someone who helps take care

11   of my own elderly parents, I am happy that I'm able to do that.

12   I'd be full of regret if I was not.

13             We as judges -- you know, to have inadequate

14   mercy is to be pitiless and cruel, to have excessive or mistaken

15   mercy is to be unjust and credulous, and that a just sentence is

16   one that is virtuous.  It's virtuous in a sense that it's in

17   balance.  It has balanced all of the factors and has reached a

18   point that is prudent.  And in prudent, we not only think of the

19   consequences of our sentence, but we also think of the, you

20   know, the consequences of the consequences, how this -- the

21   rippling effect these things have.

22             There's a lot of things that one can say positive

23   about Mr. Schulein, as has been expressed by friends and

24   neighbors, as has been expressed by your parents.  But this

25   almost seems like it's become the central part of your life.

1    You don't have -- while you're very intelligent and capable,

2    haven't had a job, haven't had a job in years.  And while

3    restitution was paid, I have to think that the money came from

4    your parents, because I don't know how you were earning money.

5              The things that stuck out in my mind in this

6    case, one, that the prolonged period of time in which the

7    conduct was engaged in, and that you did not seek help.  There's

8    no effort -- there's no evidence that there was a long break or

9    efforts to break.  But you had 13,733 messages in these dark web

10   websites, and many of which contained links to what they refer

11   to as child sex abuse material.  So you're not just a passive

12   observer.  You're sharing.  You're promoting it.  You served as

13   a guide on a website, which I'm led to understand means that you

14   were a content monitor, so that you're in active participation

15   with people that are producing this stuff, people who are

16   exchanging this stuff, and you're trying to secure more.

17             There was 135 images of child -- of children in

18   bondage, humiliation, or torture.  33 videos -- of images of

19   children in bondage, humiliation, or torture.  As I say, that

20   is -- I'm called upon to be merciful, understanding that you

21   must have felt no mercy or empathy for these children, who you

22   were watching in bondage, being humiliated, or tortured.

23   There's two videos of toddlers.  Toddlers.  You distributed the

24   images.  You distributed links to the images.  These are all

25   things that are hard to balance against -- in favor of a light

1    sentence.

2              There is treatment, and for those who seek

3    treatment, some report they have good success.  There would be

4    treatment available to you depending on where you're

5    incarcerated, but this is not a situation where you were merely

6    a passive observer or where you came across them accidentally.

7              So I've been given a lot to think about in this

8    case.  We're going to recess for five minutes.  I'll come back.

9    I'll give you my sentence.  We are in recess until 2:30.

10              (Recess from 2:24 p.m. to 2:32)

11              THE COURT:  Let the record reflect that we are

12   back on the record in the sentencing hearing in United States v.

13   Schulein.

14              One thing I didn't mention that I wanted to

15   mention, was the evidence in this case doesn't involve just

16   doing child pornography.  The evidence in this -- the evidence

17   in this case doesn't involve just child pornography.  The

18   evidence in this case also involves what you identified as a

19   romantic relationship over the internet with a girl you believed

20   to be 10 to 11 years old.

21              There's multiple pictures that she sent.  Some of

22   the pictures appear to be requests for suggestive poses,

23   particularly with her face, her mouth, a picture of her with her

24   mouth open and tongue sticking out, picture of her licking the

25   side of her mouth.  And that you used -- you superimposed upon

1    one of those photos a photo of an adult male penis over that

2    image to make it appear as though she was engaged in oral sex

3    with an adult male.

4                    This is classic grooming behavior.  For a man in

5    his mid 30s to think that he can have a sincerely romantic

6    nonexploitive relationship with a 10- or 11-year-old girl via

7    the internet, no reasonable person would conclude that there was

8    anything healthy about that relationship.  And every normal

9    person would conclude that this young girl would be at serious

10   risk in the event she were ever to meet you in real life.

11                   She has on some of these photos, "I," heart with

12   an arrow through it, "Kory."  That tells me, again, that there

13   is a lot of evil that lurks in your heart.

14                   The sentencing guidelines is 151 months to

15   188 months.  Probation has recommended a sentence of 188 months.

16   I can sentence you up to 20 years in prison.

17                   Based on the factors and the sentencing

18   guidelines and my contemplation of the factors that I have to

19   consider in 18 USC Section 3553, I find that a sentence of

20   151 months'  incarceration, followed by ten years' court

21   supervision, or supervised release, I should say, is the

22   appropriate sentence in this.  And I hereby commit to the

23   custody of the Bureau of Prisons you for a term of 151 months'

24   incarceration.

25                   The supervised release, sir, is a contract.

1    Yours will come with a lot of strings attached.  You're not

2    going to be allowed to view pornography.  You're going to have

3    to stay away from pornographic websites.  One of the things we

4    learned when you were on -- out on bond was even having been

5    caught for this and suffering the embarrassment and humiliation

6    of being caught for this offense, nonetheless, sought to access

7    further pornographic material.  That's the sort of thing --

8    that's the sort of violation that could result in extending the

9    terms of supervised release or tightening the restrictions that

10   are going to be placed upon you.

11            Because you have -- because you have paid

12   restitution, or your parents did, I'm not going to impose a fine

13   in this case, although I could fine you up to $250,000.  You

14   will have to pay the $5,000 sex offender special assessment as

15   well as the $100 special assessment.  And I will order the

16   forfeiture of the computer laptop and hard drives in this case.

17            All right.  In your plea of guilty, you did waive

18   your right to appeal.  Nonetheless, under some circumstances you

19   have the right to appeal this sentence.  Let me start over

20   again.

21            Since you have waived the right to appeal as part

22   of this plea agreement, you've entered into the plea which

23   waived some or all of your rights to appeal the sentence.  Such

24   waivers are generally enforceable.  But if you believe that the

25   waiver itself is not valid, you can present that theory to the

1    appellate court.  Also, if you believe my sentence under the

2    circumstances is beyond what is permissible, you may appeal that

3    as well, or if you think that my sentence is contrary to law,

4    you may appeal that.

5              Any notice of appeal must be filed within 14 days

6    of the entry of judgment or within 14 days of the filing of the

7    notice of appeal by the government.  If requested, the clerk

8    will prepare and file a notice of appeal on your behalf.  If you

9    cannot afford to pay the costs of an appeal or for an appellate

10   counsel, you have the right to apply for leave to appeal in

11   forma pauperis, which means you can apply to have the Court

12   waive the filing fee.  On appeal, you may also apply for

13   court-appointed counsel.

14             Are there any other matters in this case --

15             MS. BOVE:  No, Your Honor.

16             THE COURT:  -- for the state?  Anything else for

17   the defendant?

18             MS. SHERER-KOHLBURN:  No, Your Honor.

19             THE COURT:  Mr. Schulein, I really encourage you

20   to take advantage of any opportunities you have while

21   incarcerated to get treatment.  Someday you will be out and you

22   will have the opportunity to be a law-abiding member of society,

23   but you -- if you don't take advantage of programs available to

24   you, you probably are going to continue to struggle even after

25   serving this very long sentence.

1            Mr. and Mrs. Schulein, I wish that I could in

2   good conscience, and I wish that I could assess that a just

3   sentence in this case would allow your son to continue to care

4   for you.  I can't do that, because it would not be just.  And I

5   tell you that because I recognize that the sentence that I'm

6   imposing on your son is imposing a great burden on you.  And for

7   that, I'm truly empathetic with that condition.  And I am sorry

8   for your loss and your burden.

9            We are adjourned.

10            (Proceedings concluded at 2:42 p.m.)

1

2                              ° ° ° ° ° ° ° ° ° ° °

3                        **COURT REPORTER'S CERTIFICATE**

4              I certify that the foregoing is a correct
       transcript from the record of proceedings in the above-entitled
5      matter.

6              Dated this 13th day of September, 2021

7
               /s/ Hannah Jagler
8       _____

9              Hannah Jagler, RMR, CRR, FCRR
               Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25